UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROBERT ANTHONY GOINS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>E. KRANZ, et al.,<br><br>　　　　Defendants. | No. 2:25-cv-02168-SB-BFM<br><br>**INTERIM REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

This Interim Report and Recommendation is submitted to the Honorable Judge Stanley Blumenfeld, Jr., United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## SUMMARY OF RECOMMENDATION

This Interim Report and Recommendation concerns a civil rights case filed by a pro se prisoner. Plaintiff Robert Anthony Goins alleges that two prison psychologists, Dr. Elizabeth Heidler and Dr. Eugene Kranz, violated his Eighth and Fourteenth Amendment rights. Specifically, he alleges that Dr.

Kranz failed to intervene after Plaintiff told him intended to commit suicide, immediately before Plaintiff in fact attempted suicide. He also alleges that Dr. Heidler, Dr. Kranz's supervisor, did not act on knowledge that Dr. Kranz had not provided appropriate care to suicidal prisoners in the past. Finally, he alleges that Defendants violated his equal protection rights because they treated prisoners in restrictive housing and those in general population differently.

Defendants move to dismiss the Complaint in part. They concede that the Complaint plausibly alleges an Eighth Amendment claim against Dr. Kranz, the individual to whom Plaintiff expressed suicidal thoughts directly. They argue, however, that Plaintiff makes no more than conclusory allegations against Dr. Kranz's supervisor, Dr. Heidler. The Court disagrees: Plaintiff alleges that Dr. Heidler received multiple complaints about Dr. Kranz's response to prisoners' suicidal ideations, including complaints that he essentially dared inmates to act on their inclinations by refusing treatment to those who had not shown they were serious in their intent. Even knowing this, Dr. Heidler failed to take appropriate corrective action. As such, the Complaint plausibly alleges that Dr. Heidler had actual knowledge of her supervisee's conduct and failed to take action that might have prevented Plaintiff's injury.

As to Plaintiff's equal protection claim, the Court agrees with Defendants that the Complaint fails to state a claim: Plaintiff does not allege membership in a protected class, nor does he plausibly allege that Defendants lacked a rational basis for treating prisoners in restrictive housing differently from those in general population. As such, these claims should be dismissed.

The Court thus recommends that the Motion to Dismiss be granted in part, and that Plaintiff be permitted leave to amend the claim that this Report and Recommendation finds insufficient.

# BACKGROUND

## A. Factual Background

The Complaint alleges the following facts, accepted as true for purposes of this Report and Recommendation:

Plaintiff is a state prisoner who was housed at all relevant times at California Men's Colony, which is in this District. (ECF 1 ("Compl.") at 3.)[1] In January 2023, Plaintiff was placed into the Restrictive Housing Unit (RHU) for disciplinary reasons. (Compl. ¶ 1.) After two months of being housed in the RHU, Plaintiff began to decompensate and experienced suicidal ideations. (Compl. ¶¶ 2, 53.) Plaintiff alerted correctional staff of his urges to harm himself, and correctional staff issued an emergency referral for mental health treatment. (Compl. ¶¶ 6-9.)

Defendant Dr. Eugene Kranz, a staff psychologist, responded and interviewed Plaintiff with a sergeant present. (Compl. ¶¶ 10, 41.) Plaintiff asked to speak to Dr. Kranz outside the presence of the sergeant, but Dr. Kranz refused. (Compl. ¶¶ 11, 42-43.) Plaintiff felt that his request annoyed Dr. Kranz; he alleges that Dr. Kranz became "rude and agitated" and was unmotivated to hear Plaintiff out as he explained the source of his suicidal thoughts. (Compl. ¶¶ 12-13.) After listening to Plaintiff's explanation, Dr. Kranz expressed doubt that Plaintiff was serious about taking his own life. (Compl. ¶ 17.) He stated that Plaintiff's behavior was anti-social and that it could not be treated. (Compl. ¶¶ 18, 82, 108.)

Dr. Kranz informed Plaintiff he was sending him back to his cell, stating that he needed to see him try to make better decisions. (Compl. ¶ 19.) Plaintiff responded that he was going to commit suicide by attempting to hang himself when he returned to his cell. (Compl. ¶¶ 20, 52.) Dr. Krantz nevertheless sent

---

[1] For ease of reference, the Court refers to ECF-generated page numbers.

3

1
2
Plaintiff back to his cell, saying, "Take him back he's done." (Compl. ¶¶ 21, 83-86, 109, 122-23.)

3
4
5
6
7
8
9
10
11
12
13
After returning to his cell, Plaintiff made a noose, placed it around his neck, and stood on top of the sink. (Compl. ¶¶ 22, 59.) Correctional staff observed Plaintiff's actions and ordered him to step down, which Plaintiff ignored. (Compl. ¶¶ 25-26.) Correctional staff called an emergency code and sprayed pepper spray into Plaintiff's cell. (Compl. ¶¶ 27-28.) Plaintiff then stepped off the sink intending to harm himself, resulting in neck and shoulder injuries. (Compl. ¶¶ 29, 60, 91-92, 104.) Correctional staff entered Plaintiff's cell to restrain him and initiated emergency mental health procedures. (Compl. ¶ 30.) Plaintiff was moved to a suicide prevention housing unit. (Compl. ¶ 35.) According to Plaintiff, Dr. Kranz apologized to Plaintiff shortly after the incident for not addressing his issues. (Compl. ¶ 94.)

14
15
16
17
18
19
20
Plaintiff suffers from multiple mental health problems—problems Dr. Kranz and his supervisor, Defendant Dr. Elizabeth Heidler, were aware of. (Compl. ¶¶ 34, 65, 80, 110) He alleges that Dr. Kranz was aware that a rare side effect of the medication prescribed to Plaintiff included an increased risk of suicide, and that he ignored that fact when evaluating Plaintiff. (Compl. ¶¶ 32, 56, 79, 88, 113.) He further alleges that he perceived that Dr. Kranz would not help him unless he actually hurt himself. (Compl. ¶ 33.)

21
22
23
24
25
26
27
28
Defendant Dr. Elizabeth Heidler is responsible for training and supervising subordinates like Dr. Krantz and is thus required to take corrective action as necessary. (Compl. ¶¶ 36-37, 61, 63-64, 120.) Plaintiff alleges that other prisoners repeatedly complained to Dr. Heidler about Dr. Kranz's lack of professionalism. (Compl. ¶ 38.) Specifically, Dr. Heidler was made aware that Dr. Kranz would "dare" inmates to follow through with their suicidal ideations when interviewing them in response to a Mental Health

4

Chrono, and that he regularly interviewed inmates in the presence of correctional officers. (Compl. ¶¶ 39-40, 96. 116.) As such, Plaintiff alleges that Dr. Heidler knew that Dr. Kranz's conduct posed a risk to him but failed to take corrective action. (Compl. ¶¶ 45, 61, 97, 99, 117.)

Plaintiff also alleges that Defendant Heidler knew he suffered from auditory hallucinations, and that a rare side effect of his prescribed medication was a significant increase in suicidal thoughts. (Compl. ¶¶ 46-47, 66, 102.) Defendant Heidler allegedly failed to train her subordinates on the side effects of that medication. (Compl. ¶¶ 47-48, 67.)

Plaintiff alleges that Dr. Kranz improperly distinguished between RHU inmates and those in general population with respect to emergency crisis intervention treatment. (Compl. ¶ 49.) He alleges that prisoners in general population and those in the Enhanced Outpatient Program would receive treatment as soon as they alerted correctional staff of suicidal ideations, while Dr. Kranz required RHU inmates to act on their thoughts before assisting them. (Compl. ¶¶ 50-51, 70-72, 119.)

**B.  Procedural History**

Plaintiff filed his Complaint on March 10, 2025. (ECF 1.) He alleged two causes of actions: (1) an Eighth Amendment medical indifference claim and (2) a Fourteenth Amendment equal protection claim.[2] (Compl. at 10-14.) The Complaint named as Defendants Dr. Eugene Kranz and Dr. Elizabeth Heidler.

---

[2] Defendants, in their Opposition, move to dismiss a confidentiality-based claim. (*See* ECF 16-1 at 21.) The Court does not read the Complaint to allege a confidentiality claim, nor does Plaintiff address such a claim in his Opposition. As such, this Report and Recommendation does not address Defendants' arguments on that point. To the extent that Plaintiff intended to bring a standalone claim for some violation of confidentiality, it must be clearly alleged as a separate cause of action in any future amended complaint.

(Compl. at 3.) Plaintiff sought $50,000 in damages from each Defendant. (Compl. at 15.)

Defendants moved to dismiss in part, arguing that Plaintiff's Eighth Amendment claim against Dr. Heidler and his Fourteenth Amendment claim against both Defendants should be dismissed. (*See* ECF 16 ("Mot.") at 25.) Plaintiff opposed the Motion. (ECF 19, 20 ("Opp'n").) Attached to Plaintiff's Opposition is a Declaration from Plaintiff and three exhibits. (*See* Opp'n at 9-15.) Defendants filed a Reply. (ECF 24.)

The Motion is fully briefed and ready for decision.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A defendant is entitled to dismissal of an action under Federal Rule of Civil Procedure 12(b)(6) where the complaint "(1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are insufficient. *Id.*

When assessing the legal sufficiency of a plaintiff's claims, a court must accept as true all non-conclusory allegations contained in the complaint and

must construe the complaint in light most favorable to the plaintiff. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009). A court must construe a pro se litigant's pleading liberally and hold a pleading written by a pro se plaintiff to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

In general, courts may not consider material beyond the complaint in deciding a Rule 12(b)(6) motion. *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). A court may consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1988) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may *not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (citations omitted).

## ANALYSIS

**A.      Eighth Amendment Deliberate Indifference to Medical Needs**

Plaintiff alleges that Dr. Kranz violated his Eighth Amendment rights because he was deliberately indifferent to his medical needs. (Compl. at 10.) He also alleges that Dr. Heidler is liable because she failed to properly train and supervise Dr. Kranz, which resulted in his constitutional injury. (Compl. at 12.)

Defendants concede that the Complaint plausibly alleges an Eighth Amendment claim against Dr. Kranz. (Mot. at 25 ("[T]he only claim that should be permitted to continue at this early stage of the pleadings is . . . an Eighth Amendment claim premised on deliberate indifference to a serious medical

7

need against Dr. Kranz.").) That assessment appears correct. To state an Eighth Amendment medical claim, a plaintiff must allege that a defendant failed to treat a serious medical need and was deliberately indifferent to that need. *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (en banc). Here, Plaintiff's risk of suicide is undoubtedly a serious medical need. *See Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010) ("A heightened suicide risk or an attempted suicide is a serious medical need."), *cert. granted, judgment vacated sub nom. City of Reno v. Conn*, 563 U.S. 915 (2011), *opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011). Moreover, Dr. Kranz's decision to send Plaintiff back to his cell without further action after Plaintiff stated he would kill himself plausibly alleges deliberate indifference to that need. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (a prison official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health.").

Plaintiff's claim against Dr. Heidler requires a different showing. For claims brought under § 1983, an individual is not liable solely because they supervise an individual who commits an unconstitutional act. *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001). Instead, "[a] supervisor can be liable in [her] individual capacity for [her] own culpable action or inaction in the training, supervision, or control of [her] subordinates; for [her] acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1988)).

Here, Defendants argue that Plaintiff's allegations against Dr. Heidler are conclusory and thus do not plausibly allege supervisory liability against her. (Mot. at 18.) The Court disagrees. Plaintiff alleges that inmates housed in the RHU "repeatedly complained" to Dr. Heidler about Dr. Kranz's "lack of

professionalism in interacting with inmates decompensating" and that she was "made aware that Defendant Kranz would dare inmates to follow through with their suicidal ideations." (Compl. ¶¶ 38-39.) Despite this knowledge, Plaintiff alleges that Dr. Heidler "did nothing to correct [Dr. Kranz's] potentially injurious behavior."[3] (Compl. at 45.)

Such allegations are not impermissibly conclusory. They plausibly allege how Dr. Heidler was put on notice of Dr. Kranz's conduct—i.e., by other prisoners' prior complaints. That Plaintiff does not identify specific prior complaints is not dispositive; what matters is that Plaintiff plausibly alleges that prior incidents occurred and that Dr. Kranz was made aware of them because prisoners complained to her. *See Quezada v. Akabike*, No. 1:18-cv00797-DAD-JLT (PC), 2021 WL 4461129, at *5 (E.D. Cal. Sept. 29, 2021), *report and recommendation adopted*, 2021 WL 5331203 (E.D. Cal. Nov. 16, 2021) (rejecting argument that allegations, including that plaintiff's cellmate told defendants of his disability, were too conclusory; allegation had specific factual content). Liberally construed in Plaintiff's favor, the Complaint plausibly alleges that Dr. Heidler was aware of Dr. Kranz's conduct and failed to take corrective action. Plaintiff has thus stated a claim that she failed to supervise or train Dr. Kranz, or that she acquiesced in his unconstitutional conduct.

---

[3] The Court notes that Plaintiff attached a declaration and exhibits to his Opposition, both of which provide more detail about complaints made to Dr. Heidler about Dr. Kranz and about Dr. Heidler's familiarly with Plaintiff's medical conditions. (*See* Opp'n at 9-12.) In deciding a motion to dismiss under Rule 12(b)(6), however, the Court may not consider material beyond the Complaint. *Schneider*, 151 F.3d at 1197 n.1. The Court thus declines to consider those additional facts in its analysis. Should Plaintiff choose to amend his Complaint, he may incorporate those additional allegations or may attach any declarations or exhibits to that amended pleading.

9

In short, the Complaint plausibly alleges an Eighth Amendment medical indifference claim against Dr. Kranz and against Dr. Heidler as his supervisor. These claims, accordingly, should go forward.

**B.     Fourteenth Amendment Equal Protection Claim**

Plaintiff alleges that his Fourteenth Amendment equal protection rights were violated because prisoners in the RHU were treated differently than prisoners in general population when it came to receiving emergency mental health care. (Compl. ¶¶ 50-51, 70-72, 119.)

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *See City of Cleburne, Tex. v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). This "does not mean, however, that all prisoners must receive identical treatment and resources." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). To state an equal protection claim, Plaintiff must allege facts plausibly showing that Defendants intentionally discriminated against him based on his membership in a protected class, *id.* (citations omitted), or that Defendants intentionally treated him differently from other similarly situated individual with no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff meets neither of these standards. First, prisoners housed in segregation are not a protected class. *See Darrough v. Sacramento Cnty. Sheriff*, No. 2:12-cv-1814-EFB P, 2012 WL 5549650, at *2 (E.D. Cal. Nov. 9, 2012); *Williams v. Schwarznegger*, No. 1:07-cv-559-OWW-GSA, 2009 WL 248075, at *2 (E.D. Cal. Feb. 2, 2009). Plaintiff's claim can only prevail, then, if he plausibly alleges that Defendants had no rational basis for treating prisoners in RHU differently from similarly situated prisoners. But the Complaint contains no such allegations; Plaintiff only alleges that "[n]o

penological purpose exists to excuse Defendants invidiously dissimilar treatment . . ." (Compl. ¶ 123.) That allegation is conclusory, and conclusory allegations are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. Moreover, RHU prisoners and those in general population are not similarly situated, and it is entirely rational that the RHU, which houses individuals separated from general population for security purposes, has different policies than those that govern general population. *Adkins v. Shinn*, No. CIV. 14-00156 LEK, 2014 WL 2738531, at *8 (D. Haw. June 16, 2014) (prisoners in segregated housing unit are not similarly situated with those in general population); *Rose v. Woodford*, 05-cv-1470-OWW-SMS P, 2006 WL 845587, at *2 (E.D. Cal. Mar. 31, 2006) (same).

The Court therefore recommends granting Defendants' Motion in part and dismissing Plaintiff's equal protection claim.

**C.     Leave to Amend**

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). There is a strong public policy in favor of permitting amendment. *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). In line with that policy, the Ninth Circuit has made clear that courts should apply Rule 15(a) with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). While the Court is skeptical that Plaintiff will be able to cure the deficiencies identified above through amendment, it is not impossible that he could do so. As such, the Court recommends granting Plaintiff thirty days from the date of the Order Accepting this Report and Recommendation either to file a First Amended Complaint addressing the deficiencies identified herein or to notify the Court that he intends to proceed with the claims found adequate here.

# RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Judge issue an Order:

(1) accepting and adopting this Interim Report and Recommendation;

(2) granting in part Defendants' Motion to Dismiss (ECF 16) to the extent that it seeks dismissal of Plaintiff's equal protection claim;

(3) otherwise denying Defendant's Motion;

(4) ordering Plaintiff to either notify the Court that he wishes to proceed on his remaining claims or to file a First Amended Complaint within 30 days of any order accepting this Report and Recommendation.

DATED: August 22, 2025

_____
BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the United States Court of Appeals for the Ninth Circuit, but may be subject to the right of any party to file objections as provided in the Local Civil Rules for the United States District Court for the Central District of California and review by the United States District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until the District Court enters judgment.