ROB BONTA
Attorney General of California
WILLIAM C. KWONG
Supervising Deputy Attorney General
MACKLIN THORNTON
Deputy Attorney General
State Bar No. 327927
 600 West Broadway, Suite 1800
 San Diego, CA 92101
 Telephone: (619) 321-5166
 Fax: (916) 732-7920
 E-mail: Macklin.Thornton@doj.ca.gov
*Attorneys for Defendants*
*E. Heidler and E. Kranz*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **ROBERT ANTHONY GOINS,** | 2:25-cv-02168-SB-ACCV |
| Plaintiff, | **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| **v.** | |
| **E. KRANZ, et al.,** | |
| Defendants. | |

Defendants E. Kranz and E. Heidler respectfully submit the following statement of uncontroverted facts in support of their Motion for Summary Judgment. *See* L.R. 56-1. These facts are undisputed for purposes of this motion only.

/ / /

/ / /

/ / /

/ / /

/ / /

1

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| **I.** | **THE PARTIES** | |
| 1. | Plaintiff Goins is in the custody of the California Department of Corrections and Rehabilitation (CDCR).<br><br>Declaration of Macklin W. Thornton in Support of Defendants' Motion for Summary Judgment (Thornton Decl.) Ex. 1 at 7:18–23.[1] | |
| 2. | Plaintiff has preexisting neck injuries.<br><br>Thornton Decl. Ex. 1 at 28:22–29:3. | |
| 3. | Dr. Kranz was a Clinical Psychologist at California Men's Colony (CMC) during the relevant time.<br><br>Declaration of E. Kranz in Support of Defendants' Motion for Summary Judgment (Kranz Decl.) ¶ 3. | |
| 4. | In this role, Kranz's duties included providing mental health treatment to inmates.<br><br>Kranz Decl. ¶ 3. | |

---

[1] Page references to *docket entries* refer to the pagination assigned by CM/ECF. Page references to *exhibits* attached to supporting declarations to this motion refer to the stamped, chronological pages at the bottom of each page following exhibit cover sheets. References to any *deposition transcript* refer to the page numbers on the transcript itself.

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 5. | Licensed psychologists do not have prescriptive authority in California.<br><br>Kranz Decl. ¶ 11; Declaration of E. Heidler in Support of Defendants' Motion for Summary Judgment (Heidler Decl.) ¶ 8. | |
| 6. | Kranz served on the Crisis Intervention Team (CIT), which responds inmates' mental health emergencies.<br><br>Kranz Decl. ¶¶ 3, 9; Heidler Decl. ¶¶ 7, 11. | |
| 7. | In February 2026, Kranz promoted to Senior Psychologist Supervisor.<br><br>Kranz Decl. ¶ 3. | |
| 8. | Dr. Heidler was a Senior Psychologist Supervisor at CMC during the relevant time.<br><br>Heidler Decl. ¶ 3. | |
| 9. | In this role, Heidler supervised and trained Clinical Psychologists.<br><br>Heidler Decl. ¶ 3. | |

3

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| **II.** | **CDCR's MENTAL HEALTH SERVICES** | |
| | **A.  The Mental Health Services Delivery System (MHSDS)** | |
| **10.** | The MHSDS Program Guide delineates care guidelines for patients at all levels of custody in CDCR.<br><br>Thornton Decl. Ex. 2 ¶ 11; Kranz Decl. ¶ 7; Heidler ¶ 5; Kranz Decl. Ex. 2 at 3. | |
| **11.** | Mental health services are based on "levels of care" assigned through screening and evaluation by mental health clinicians.<br><br>Thornton Decl. Ex. 2 ¶ 11; Kranz Decl. Ex. 2 at 8–11. | |
| **12.** | Levels of care denote the acuity of a patient's mental health needs and ability to function in a correctional environment.<br><br>Thornton Decl. Ex. 2 ¶ 11; Kranz Decl. Ex. 2 at 8–11. | |
| **13.** | The lowest (*i.e.*, least acute) level of care is the Correctional Clinical Case Management System (CCCMS).<br><br>Thornton Decl. Ex. 2 ¶ 11; Kranz Decl. Ex. 2 at 9. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 14. | For patients with chronic mental health problems or those suffering from acute mental health crises, the Enhanced Outpatient Program (EOP) level of care provides more intensive individual and group treatment.<br><br>Thornton Decl. Ex. 2 ¶ 11; Kranz Decl. Ex. 2 at 9–10. | |
| 15. | The EOP provides the most intensive level of *outpatient* mental health care within the MHSDS.<br><br>Kranz Decl. Ex. 2 at 21; Kranz Decl. ¶ 7; Heidler Decl. ¶ 5. | |
| 16. | Short-term and longer-term inpatient facilities are available.<br><br>Thornton Decl. Ex. 2 ¶ 11; Kranz Decl. Ex. 2 at 10–11. | |
| 17. | The goal of the Mental Health Crisis Bed (MHCB) program is to treat conditions requiring an *inpatient* setting to ameliorate mental health symptoms in the least restrictive environment.<br><br>Kranz Decl. Ex. 2 at 42. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 18. | A patient admitted to the MHCB may have acute symptoms of a serious mental disorder or may be suffering from a significant or life-threatening disability.<br><br>Kranz Decl. Ex. 2 at 42. | |
| 19. | Where twenty-four-hour care is needed, an incarcerated patient is placed in a MHCB for continuous nursing care.<br><br>Kranz Decl. Ex. 2 at 42–43. | |
| 20. | A patient suffering from an acute, serious mental disorder resulting in serious functional disabilities, or who is dangerous to self or others, is referred to a MHCB.<br><br>Kranz Decl. Ex. 2 at 44. | |
| 21. | A patient must meet specific criteria to receive treatment at the MHCB level of care.<br><br>Kranz Decl. Ex. 2 at 43–44. | |
| 22. | Not all crises require admission to the MHCB.<br><br>Kranz Decl. Ex. 2 at 42. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 23. | Crisis episodes for some patients may be handled on an outpatient basis. Kranz Decl. Ex. 2 at 42. | |
| **B. The Crisis Intervention Team (CIT)** | | |
| 24. | The CIT is part of CMC's crisis mental health response. Kranz Decl. Ex. 1 § I–II; Thornton Decl. Ex. 2 ¶ 12. | |
| 25. | It is an interdisciplinary team that includes a mental health clinician, nursing staff, and custody supervisory staff. Kranz Decl. Ex. 1 §§ I, VIII(1)–(4); Thornton Decl. Ex. 2 ¶ 12. | |
| 26. | The CIT sees each patient in-person, in a confidential setting, together as a team, and as close to the patient's housing unit as possible. Kranz Decl. Ex. 1 § I; Thornton Decl. Ex. 2 ¶ 12. | |
| 27. | The CIT provides responsive crisis intervention strategies directed toward resolving patient crises. Kranz Decl. Ex. 1 § I. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 28. | Prompt attention to potential crisis issues allows staff to work with the patient to address concerns that could lead to self-harm or suicidal behavior.<br><br>Kranz Decl. Ex. 1 § I; Thornton Decl. Ex. 2 ¶ 12. | |
| 29. | The interdisciplinary model of the CIT improves the collaboration and partnership of the disciplines to meet patients' needs.<br><br>Kranz Decl. Ex. 1 § I; Thornton Decl. Ex. 2 ¶ 12. | |
| 30. | A crisis is a sudden or rapid onset or exacerbation of symptoms of mental illness, which may include suicidality or other aberrant behavior, and requires immediate intervention.<br><br>Kranz Decl. Ex. 1 § VI. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 31. | Situations involving mental health crisis may follow trajectories that include intense feelings of personal distress (*e.g.*, anxiety, depression, anger, panic, hopelessness), obvious changes in functioning (*e.g.*, neglect of personal hygiene, unusual behavior), and may be precipitated by catastrophic life events (*e.g.*, disruptions in personal relationships, support systems or living arrangements; loss of autonomy or parental rights; victimization or natural disasters).<br><br>Kranz Decl. Ex. 1 § VI. | |
| 32. | When a patient reports or staff observe an emergent mental health need, staff notify CIT members.<br><br>Kranz Decl. Ex. 1 § VII(A)(3). | |
| 33. | The CIT members will complete a record review prior to meeting the patient.<br><br>Kranz Decl. Ex. 1 § VII(B)(1). | |
| 34. | The CIT convenes within thirty minutes and will initiate intervention in collaboration with all team members.<br><br>Kranz Decl. Ex. 1 § VII(B)(2). | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 35. | The CIT interviews the patient to identify the type of crisis, takes appropriate action regarding treatment planning, assesses the patient's ability to understand and communicate, assesses the problem using de-escalation and motivational interviewing techniques, and assesses whether a referral to the psychiatrist is clinically indicated.<br><br>Kranz Decl. Ex. 1 § VII(B)(3). | |
| 36. | As part of the interview, the mental health clinician determines whether the patient needs a referral to the MHCB.<br><br>Kranz Decl. Ex. 1 § VIII(1)(f). | |

**III. PLAINTIFF'S MENTAL HEALTH AND ATTEMPTS TO AVOID HIS RESTRICTED HOUSING UNIT (RHU) PLACEMENT BEFORE THE INCIDENT**

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 37. | The Administrative Segregation Unit (ASU) (sometimes referred to as "Ad Seg") has been reorganized as part of the RHU.<br><br>Kranz Decl. ¶ 12 n.1; Thornton Decl. Ex. 1 at 42:7–9. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 38. | Between January 7, 2023 and January 13, 2023, Plaintiff was housed in MHCB after reporting he would kill himself if he were placed in the RHU as a result of his visitor attempting to bring illicit substances into CMC.<br><br>Declaration of J. Willingham in Support of Defendants' Motion for Summary Judgment (Willingham Decl.) Ex. 1 at 1–2; Thornton Decl. Ex. 2 ¶ 16–17, 19. | |
| 39. | Plaintiff said "if I go up to [RHU] I am going to kill myself, I know what I am going to do. I don't deserve to be up there."<br><br>Willingham Decl. Ex. 1 at 1. | |
| 40. | On January 10, 2023, Dr. Heidler saw Plaintiff while he was housed in MHCB.<br><br>Willingham Decl. Ex. 1 at 1–2. | |
| 41. | Plaintiff expressed concern about being housed in RHU without his property and the investigation into the illicit substance allegations.<br><br>Willingham Decl. Ex. 1 at 1–2; Thornton Decl. Ex. 1 at 31:1–3. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 42. | Heidler reported Plaintiff was "able to see the more optimistic side of things" and was "future oriented and finds comfort in family visits." Willingham Decl. Ex. 1 at 2. | |
| 43. | Heidler saw that Plaintiff "has no documented suicide attempts on record." Willingham Decl. Ex. 1 at 2. | |
| 44. | Heidler's medical report noted Plaintiff would "remain in the MHCB for the next few days." Willingham Decl. Ex. 1 at 2. | |
| 45. | After discharged from MHCB, Plaintiff was housed in CMC's RHU EOP program and was not experiencing suicidal ideations. Thornton Decl. Ex. 2 ¶ 20. | |
| 46. | Over the following five days, Plaintiff exhibited no suicidal ideation and decreased distress. Thornton Decl. Ex. 2 ¶ 21. | |

12

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 47. | Between his MHCB discharge on January 13, 2023, and evaluation by Dr. Kranz on March 26, 2023, Plaintiff attended recreation therapy groups and saw his mental health clinician and assigned psychiatrist regularly.<br><br>Thornton Decl. Ex. 2 ¶ 22; Willingham Decl. Ex. 1 at 9, 14, 24, 25, 27, 30. | |
| 48. | As Plaintiff approached two months in RHU, Plaintiff complained to clinicians about the stress and uncertainty of his situation, including worrying of being transferred away from CMC.<br><br>Thornton Decl. Ex. 2 ¶ 22; Willingham Decl. Ex. 1 at 7, 9, 15, 16, 17. | |
| 49. | On March 9, 2023, Plaintiff was compliant with his medications and denied having suicidal ideations.<br><br>Willingham Decl. Ex. 1 at 10. | |
| 50. | On March 14, 2023, Plaintiff expressed being tired of being housed in RHU but denied having problems with his medication or having suicidal ideations.<br><br>Willingham Decl. Ex. 1 at 9. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 51. | On March 18, 2023, Plaintiff expressed being depressed because he wanted out of RHU. Willingham Decl. Ex. 1 at 17. | |
| 52. | On March 21, 2023, Plaintiff explained he was "worried and concerned they will transfer me" and "[didn't] want to cell with others; I've been dreading it." Willingham Decl. Ex. 1 at 7, 16. | |
| 53. | During the March 21 appointment, Plaintiff denied problems with his medication, identified coping skills, and denied having suicidal ideation. Willingham Decl. Ex. 1 at 7, 16. | |
| 54. | On March 24, 2023, Plaintiff was anxious because of a possible transfer but denied having suicidal ideations. Willingham Decl. Ex. 1 at 15. | |
| 55. | Psychiatric technician reports from March 2023 report intermittent suicidal thoughts *without* plan or intent to act. Thornton Decl. Ex. 2 ¶ 22. | |

14

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 56. | Clinicians reported Plaintiff was coping well with the stress and was compliant with his psychotropic medications. Thornton Decl. Ex. 2 ¶ 22. | |
| IV. | **DEFENDANTS' INTERACTIONS WITH PLAINTIFF BEFORE THE MARCH 26, 2023 INCIDENT.** | |
| 57. | Kranz's first interaction with Plaintiff was on March 26, 2023. Thornton Decl. Ex. 1 at 34:9–12, 35:2–9; Kranz Decl. ¶ 11. | |
| 58. | Heidler's only interaction with Plaintiff was on January 10, 2023. Thornton Decl. Ex. 1 at 31:20–32:10; Heidler Decl. ¶ 9; Willingham Decl. Ex. 1 at 1–2. | |
| 59. | Heidler did not treat or interact with Plaintiff on March 26, 2023. Thornton Decl. Ex. 1 at 31:20–32:10; Heidler Decl. ¶ 9. | |
| 60. | Before March 26, 2023, Plaintiff did not complain to Heidler regarding Kranz's provision of mental health treatment. Thornton Decl. Ex. 1 at 38:12–19; Heidler Decl. ¶ 9. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| **V.** | **THE MARCH 26, 2023 INCIDENT.** | |
| 61. | On March 26, 2023, around 5:50 P.M., Kranz received a CIT alert that Plaintiff required a mental health assessment.<br><br>Kranz Decl. ¶ 12; Willingham Decl. Ex. 1 at 19, 31; Thornton Decl. Ex. 2 ¶ 22. | |
| 62. | The CIT, including Kranz, responded to Plaintiff and interviewed him.<br><br>Willingham Decl. Ex. 1 at 24–32. | |
| 63. | Plaintiff said "I heard bad news about my son today . . . but also I've been here for two and half months and I'm mentally exhausted . . . . I'm thinking about wrapping a sheet around my neck."<br><br>Willingham Decl. Ex. 1 at 24, 31, 33, 42; Thornton Decl. Ex. 2 ¶¶ 24, 25. | |
| 64. | Plaintiff reported he felt this way for "[a] week" but didn't know if he told his primary clinician.<br><br>Willingham Decl. Ex. 1 at 31, 33, 42. | |

16

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 65. | Kranz checked Plaintiff's mental health records from an encounter on March 21, 2023.<br><br>Willingham Decl. Ex. 1 at 7, 24, 31, 33, 42 | |
| 66. | According to the notes, "there was no indication of [suicidal ideation] on 3/21/2023."<br><br>Willingham Decl. Ex. 1 at 7, 24, 31, 33, 42. | |
| 67. | Kranz reviewed the note, which reported Plaintiff stating "I'm good.  I'm super depressed and mentally exhausted.  I've been worried and concerned they will transfer me.  I am safe at this prison, I don't do well with people, I don't want to cell with others; I've been dreading it."<br><br>Willingham Decl. Ex. 1 at 7, 24, 31, 33, 42; Thornton Decl. Ex. 2 ¶ 25. | |
| 68. | Kranz reviewed Plaintiff's diagnoses of Generalized Anxiety Disorder, severe Alcohol Use Disorder, and Adult Anti-Social Personality Disorder.<br><br>Willingham Decl. Ex. 1 at 24, 31, 33, 42. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 69. | Kranz noted Plaintiff had no history of self-injurious behavior or suicide attempts, was compliant with his medication, and attended groups frequently "with good participation."<br><br>Willingham Decl. Ex. 1 at 25–26, 29, 32, 33. | |
| 70. | Kranz noted Plaintiff was vague about his "stressors" and the "bad news" from his son—except that he was "mentally exhausted" from being housing in the RHU.<br><br>Willingham Decl. Ex. 1 at 24, 25, 29, 31, 32, 33, 34, 42. | |
| 71. | Kranz documented that Plaintiff's "self report regarding being suicidal for a week was incongruent with documentation. In addition, it appears [Plaintiff] is wary of a possible transfer and is attempting to use impression management to obtain a [level-of-care] change."<br><br>Willingham Decl. Ex. 1 at 25, 29, 32, 33. | |
| 72. | The CIT determined Plaintiff could remain at the EOP level of care.<br><br>Willingham Decl. Ex. 1 at 25, 29, 32, 34; Thornton Decl. Ex. 2 ¶ 25. | |

18

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 73. | Kranz noted when Plaintiff "was told that he wouldn't be going to [Correctional Treatment Center (CTC)] and that he can program at EOP [level of care] and work on coping skills to manage his stressors," Plaintiff responded "ok, what's your name?  Spell it!  Ok, after I go back in my cell and do what I got to do I'm going to file paperwork on you for deliberate indifference."<br><br>Willingham Decl. Ex. 1 at 24–25, 29, 32, 33, 39, 34, 42; Thornton Decl. Ex. 2 ¶ 25; Thornton Decl. Ex. 1 at 49:25–50:5, 50:19–23. | |
| 74. | Kranz did not dare or incite Plaintiff to harm himself as a prerequisite to receiving mental health treatment.<br><br>Kranz Decl. ¶ 19; Thornton Decl. Ex. 1 at 52:1–19. | |
| 75. | Kranz determined Plaintiff's statement suggested a "planned calculation to use impression management" to secure a higher level of care.<br><br>Willingham Decl. Ex. 1 at 25, 29, 32, 34. | |

19

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 76. | Plaintiff demonstrated "future orientation regarding planning to 'file paperwork'" after engaging in "attention seeking, maladaptive" behavior.<br><br>Willingham Decl. Ex. 1 at 25, 29, 32, 34. | |
| 77. | Kranz noted Plaintiff made "conditional threats to tie a sheet around his neck if he wasn't transferred to MHCB."<br><br>Willingham Decl. Ex. 1 at 25, 27. | |
| 78. | During his interactions with Plaintiff, Kranz adequately and appropriately evaluated Plaintiff's suicide risk under CDCR policies and procedures.<br><br>Thornton Decl. Ex. 2 ¶¶ 31–33, 38; Heidler Decl. ¶ 12; Thornton Decl. Ex. 1 at 10:15–23, 54:9–13. | |
| 79. | Kranz made the appropriate clinical decision for Plaintiff to remain at his housing assignment.<br><br>Thornton Decl. Ex. 2 ¶¶ 31–33, 38; Heidler Decl. ¶ 12; Thornton Decl. Ex. 1 at 10:15–23, 54:9–13. | |
| VI. | **PLAINTIFF'S STAGED SUICIDE ATTEMPT.** | |
| 80. | After the interview with CIT, nonparty staff escorted Plaintiff back to his cell.<br><br>Thornton Decl. Ex. 1 at 54:17–25. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 81. | Around 7:05 P.M., custody staff issued a code because Plaintiff placed a sheet around his neck, tied the sheet to the window, and stood on his sink or toilet seat.<br><br>Willingham Decl. Ex. 1 at 34; Declaration of B. Sullivan in Support of Defendants' Motion for Summary Judgment (Sullivan Decl.) Ex. 1 at 1; Thornton Decl. Ex. 1 at 56:9–16. | |
| 82. | Nonparty staff ordered Plaintiff to remove the sheet.<br><br>Willingham Decl. Ex. 1 at 34; Thornton Decl. Ex. 1 at 57:1–2. | |
| 83. | Medical staff completed a preliminary medical form around 7:12 P.M.<br><br>Sullivan Decl. Ex. 1 at 1. | |
| 84. | The medical form reflected no injuries and a comment from Plaintiff: "[j]ust keep an eye out on me."<br><br>Sullivan Decl. Ex. 1 at 1. | |
| 85. | Nonparty staff escorted Plaintiff to the Treatment and Triage Area (TTA) around 7:44 P.M.<br><br>Willingham Decl. Ex. 1 at 21, 23. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 86. | During the examination, staff wrote "[n]o ligature marks or bruising noted and airway clear."<br><br>Willingham Decl. Ex. 1 at 23. | |
| 87. | After being assessed, nonparty staff escorted Plaintiff to the Alternative Housing Unit around 8:08 P.M.<br><br>Willingham Decl. Ex. 1 at 23; Thornton Decl. Ex. 2 at 27. | |
| 88. | After the incident, Kranz's impression was that this was not a suicide attempt; instead, it was a was an attempt to affect a change in Plaintiff's level of care, avoid a pending transfer, or avoid his RHU housing assignment.<br><br>Willingham Decl. Ex. 1 at 34. | |

**VII. DEFENDANTS' INTERACTIONS WITH PLAINTIFF AFTER THE MARCH 26, 2023 INCIDENT.**

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 89. | On March 27, 2023, around 1:30 P.M., Kranz evaluated Plaintiff.<br><br>Willingham Decl. Ex. 1 at 35–42, 43–44; Thornton Decl. Ex. 1 at 35:2–9; Thornton Decl. Ex. 2 ¶ 28. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 90. | Plaintiff said he was worried about being transferred, afraid he might end up hurting someone if housed with a cellmate, and wanted placement in the CTC.<br><br>Willingham Decl. Ex. 1 at 35, 43; Thornton Decl. Ex. 1 at 65:5–7, 66:9–15, 66:21–24. | |
| 91. | Plaintiff noted other stressors, including his child's school problems and discontent with his medications.<br><br>Willingham Decl. Ex. 1 at 35, 43; Thornton Decl. Ex. 1 at 65:23–66:2; Thornton Decl. Ex. 2 ¶ 28. | |
| 92. | Plaintiff said he had an upcoming Institutional Classification Committee (ICC) regarding his housing placement.<br><br>Willingham Decl. Ex. 1 at 35, 43; Thornton Decl. Ex. 1 at 66:9–15. | |
| 93. | Plaintiff agreed to continue at the EOP level of care within the RHU until the ICC determined whether he would be transferred.<br><br>Willingham Decl. Ex. 1 at 35, 43; Thornton Decl. Ex. 1 at 66:9–15. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 94. | Plaintiff was future-oriented, commenting on desiring to return to programming and discussing his upcoming ICC.<br><br>Willingham Decl. Ex. 1 at 36, 43; Thornton Decl. Ex. 1 at 63:23–64:5, 66:9–15; Thornton Decl. Ex. 2 ¶ 28. | |
| 95. | Kranz did not deem the behavior on March 26, 2023, a suicide attempt because there was no injury, Plaintiff "appeared to stage a suicidal gesture that was deemed high rescue, low lethality" behavior to affect a change in Plaintiff's level of care.<br><br>Willingham Decl. Ex. 1 at 36, 38, 44; Kranz Decl. ¶ 18. | |

## VIII.  DR. HEIDLER'S SUPERVISION OF DR. KRANZ

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 96. | Plaintiff has never seen Heidler and Kranz together at the same time, has never seen Heidler provide training to Kranz, and has never seen Heidler speak to Kranz.<br><br>Thornton Decl. Ex. 1 at 67:11–22. | |
| 97. | Plaintiff is unaware of the training or supervisory actions Heidler should have taken or the scope of Heidler's duties or requirements as a supervisor.<br><br>Thornton Decl. Ex. 1 at 68:17–19. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 98. | Licensed practitioners who work for CDCR or CCHCS are not required to have regular clinical supervision of their work.<br><br>Thornton Decl. Ex. 2 at ¶ 34; Kranz Decl. ¶ 16; Heidler Decl. ¶ 10. | |
| 99. | Heidler's level of supervision and monitoring was within the requirements of the local and statewide policies for CITs in CDCR.<br><br>Thornton Decl. Ex. 2 at ¶ 35; Heidler Decl. ¶ 13. | |
| 100. | And Kranz met the training requirements for his position.<br><br>Thornton Decl. Ex. 2 at ¶¶ 36, 38; Kranz Decl. ¶ 2; Heidler Decl. ¶ 13; Declaration of K. Martin in Support of Defendants' Motion for Summary Judgment (Martin Decl.) Ex. 3 at 2. | |

## IX. PLAINTIFF'S GRIEVANCES.

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 101. | At all relevant times, CDCR required inmate-patients to use an administrative grievance process to bring health care related complaints.<br><br>Martin Decl. ¶ 3; Cal. Code Regs. tit. 15, §§ 3999.225–3999.237. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 102. | The grievance process to exhaust administrative remedies as to health care related claims was available to Plaintiff at all relevant times.<br><br>Martin Decl. ¶¶ 3, 7–8. | |
| | **A.    The Health Care Grievance Process.** | |
| 103. | Under the California Code of Regulations, title 15, §§ 3999.225–3999.237, patients may grieve issues regarding health care policies, decisions, actions, conditions, or omissions using a CDCR 602 HC, Health Care Grievance form.<br><br>Martin Decl. ¶ 3; Cal. Code Regs. tit. 15, §§ 3999.226, 3999.227(a). | |
| 104. | The patient must submit a healthcare grievance within thirty days of the "action or decision being grieved" or "[i]nitial knowledge of the action or decision being grieved."<br><br>Cal. Code Regs. tit. 15, § 3999.227(b). | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 105. | Health care grievances are subject to two levels of review: (1) health care grievances are processed at the institutional level by Health Care Grievance Offices at each institution and (2) health care grievance appeals are processed at the headquarters level by the Health Care Correspondence and Appeals Branch (HCCAB), if requested.<br><br>Martin Decl. ¶ 3; Cal. Code Regs. tit. 15, §§ 3999.228(a), 3999.230(h). | |
| 106. | Health care grievances/appeals are subject to a headquarters disposition before administrative remedies are deemed exhausted.<br><br>Martin Decl. ¶ 3; Cal. Code Regs. tit. 15, § 3999.225(b); *id.* § 3999.226(g); *id.* § 3999.230(h), (j). | |
| 107. | Health care grievances are tracked and maintained in an electronic database known as the Health Care Appeals and Risk Tracking System.<br><br>Martin Decl. ¶ 4. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| | **B.     Plaintiff's Relevant Health Care Grievances.** | |
| 108. | Following the incident, Plaintiff had access to an available administrative remedy through the grievance process at CMC.<br><br>Martin Decl. ¶¶ 7–8; Martin Decl. Exs. 1–3. | |
| 109. | On April 6, 2023, healthcare staff received Plaintiff's grievance with tracking number CMC HC 23000342.<br><br>Martin Decl. ¶ 7; Martin Decl. Ex. 1 at 2; Martin Decl. Ex. 2 at 5. | |
| 110. | In the grievance, Plaintiff complained about Kranz's treatment after Plaintiff expressed suicidal ideation.<br><br>Martin Decl. ¶ 7; Martin Decl. Ex. 2 at 3–6. | |
| 111. | Plaintiff did not mention or name Heidler in his grievance, and Plaintiff did not address any defects in Kranz's supervision.<br><br>Martin Decl. ¶ 7; Martin Decl. Ex. 2 at 3. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 112. | At the first level of review at the institutional level, CMC denied intervention on June 2, 2023.<br><br>Martin Decl. ¶ 7; Martin Decl. Ex. 1 at 2; Martin Decl. Ex. 2 at 7–9; Martin Decl. Ex. 1 at 2. | |
| 113. | Plaintiff appealed the Institutional Level Response, which was received at the headquarters level on June 12, 2023.<br><br>Martin Decl. ¶ 7; Martin Decl. Ex. 1 at 2; Martin Decl. Ex. 2 at 6. | |
| 114. | Plaintiff did not mention or name Heidler in his appeal, and Plaintiff did not address any defects in Kranz's supervision.<br><br>Martin Decl. ¶ 7; Martin Decl. Ex. 2 at 6. | |
| 115. | At the second level of review at the headquarters level, HCCAB issued a disposition of no intervention on August 24, 2023.<br><br>Martin Decl. ¶ 7; Martin Decl. Ex. 1 at 2; Martin Decl. Ex. 2 at 1–2. | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 116. | In the middle of this litigation, Plaintiff submitted another grievance with tracking number CMC HC 26000250, which was received by healthcare staff on April 21, 2026.<br><br>Martin Decl. ¶ 8; Martin Decl. Ex. 1 at 1; Martin Decl. Ex. 3 at 4. | |
| 117. | Plaintiff rehashed aspects from his first grievance and added that Kranz falsified a report regarding a purported injury sustained on March 26, 2023.<br><br>Martin Decl. ¶ 8; Martin Decl. Ex. 3 at 4, 6. | |
| 118. | The recent grievance did not mention Heidler.<br><br>Martin Decl. ¶ 8; Martin Decl. Ex. 3 at 4, 6. | |
| 119. | Plaintiff was issued an Institutional Level Response dated June 24, 2026, with a disposition of no intervention.<br><br>Martin Decl. ¶ 8; Martin Decl. Ex. 1 at 1; Martin Decl. Ex. 3 at 1; Thornton Decl. Ex. 1 at 87:19–88:2 | |

| No. | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 120. | There is no record that this grievance was received for headquarters level review.<br><br>Martin Decl. ¶ 8; Martin Decl. Ex. 1 at 1; Martin Decl. Ex. 3 at 1; Thornton Decl. Ex. 1 at 87:19–88:2. | |

Dated: July 2, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
WILLIAM C. KWONG
Supervising Deputy Attorney General

**/s/ Macklin Thornton**
MACKLIN THORNTON
Deputy Attorney General
*Attorneys for Defendants*
*E. Heidler and E. Kranz*

LA2025400772