ROB BONTA
Attorney General of California
WILLIAM C. KWONG
Supervising Deputy Attorney General
MACKLIN THORNTON
Deputy Attorney General
State Bar No. 327927
 600 West Broadway, Suite 1800
 San Diego, CA 92101
 Telephone: (619) 321-5166
 Fax: (916) 732-7920
 E-mail: Macklin.Thornton@doj.ca.gov
*Attorneys for Defendants*
*E. Heidler and E. Kranz*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **ROBERT ANTHONY GOINS,** | 2:25-cv-02168-SB-ACCV |
| Plaintiff, | **DECLARATION OF E. KRANZ IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| **v.** | |
| **E. KRANZ, et al.,** | |
| Defendants. | |

I, E. Kranz, PhD, declare:

1.    I am a Defendant in this matter.  I am employed by California Correctional Health Care Services (CCHCS) as a Senior Psychologist Supervisor at California Men's Colony (CMC).  I am competent to testify to the matters set forth in this declaration and, if called upon by this Court, would do so.  I submit this declaration in support of Defendants' Motion for Summary Judgment.

2.    I received a Bachelor of Arts degree in Biological Sciences, a Masters degree in Transpersonal Psychology, and received a PhD degree in Clinical Psychology.  I became a licensed psychologist in 2009.  I have received the

1

following trainings: suicide prevention training; Suicide Prevention and SRASHE Core Competency Building; SRASHE mentoring; Crisis Intervention Team (CIT) trainings; shadowed a CIT clinician; and trainings specific to Correctional Treatment Center, Mental Health Crisis Bed, Developmental Disability Placement Program, and CCHCS.

3. In 2014, I started working as a Clinical Psychologist for CCHCS. In February 2026, I promoted to a Senior Psychologist Supervisor for CCHCS. During my time as a Clinical Psychologist, my duties included serving as a primary clinician; providing assessment and diagnostic workups, treatment planning, individual and/or group psychotherapy, psychological evaluations and testing, intakes, case management and discharge duties for those inmates assigned or referred for such services; providing consultation and crisis intervention services on an as needed basis; and carrying out difficult assignments in clinical psychology which involve the assessment and treatment of inmates, program development and evaluation, clinical research, professional training and consultation. As a Clinical Psychologist, my duties also involved serving as a member of the CIT.

4. I am familiar with and have received training regarding California Department of Corrections and Rehabilitation's (CDCR) and CCHCS's suicide prevention and response policies. Moreover, because of my position and training, I am aware of and have access to CCHCS's suicide prevention and response policies.

5. Attached as **Exhibit 1** is a true and correct copy of CMC's Operational Procedure No. 3043 on the CIT, which is dated August 2022.

6. Attached as **Exhibit 2** is a true and correct copy of excerpts from CCHCS's Mental Health Services Delivery System (MHSDS) Program Guide, which is revised as of 2021. The full MHSDS Program Guide is publicly available at https://cchcs.ca.gov/policies/.

2

7.     The MHSDS Program Guide outlines the scope of the various levels of care to address inmate mental health needs.  As relevant to Plaintiff Robert Anthony Goins's allegations, one level of care is the Enhanced Outpatient Program (EOP):

> The [EOP] [level of care] provides the most intensive level of *outpatient* mental health care within the [MHSDS].  The program is characterized by a separate housing unit and structured activities for mentally ill inmate-patients who, because of their illness, experience adjustment difficulties in a General Population (GP) setting, yet are not so impaired as to require 24-hour inpatient care.  Inmate-patients who, because of a mental disorder, do not function well in EOP may be referred for higher levels of care including: Mental Health Crisis Bed (MHCB); or Department of Mental Health (DMH) Day Treatment Program, Intermediate Care Program, or Acute Psychiatric Program.

Mental Health Services Delivery System, Program Guide, Ch. 4 (emphasis added).

8.     Another relevant level of care is the Mental Health Crisis Bed (MHCB) program:

> The goal of the [MHCB] program is to provide services for conditions which require an *inpatient* setting to ameliorate mental health symptoms in the least restrictive environment.  MHCB programs are located in [CDCR] institutions with facilities licensed as a Correctional Treatment Center (CTC). . . .  The MHCB program operates 24 hours a day, 7 days a week.  An inmate-patient admitted to the MHCB for mental health treatment may have acute symptoms of a serious mental disorder or may be suffering from a significant or life threatening disability.

*Id.*, Ch. 5 (emphasis added).

> Presenting problems may require continuous observation or monitoring before an inmate-patient's treatment needs can be fully assessed or the crisis brought under control.  Where 24-hour care is needed, an inmate-patient shall be placed in a MHCB for continuous nursing care. . . .  The primary objective of the MHCB is to evaluate the symptoms associated with the crisis and provide initial stabilization and recommendations for follow-up care, post discharge.

*Id.* "An inmate-patient suffering from an acute, serious mental disorder resulting in serious functional disabilities, or who is dangerous to self or others, shall be referred to a MHCB." *Id.* "All inmate-patients referred to the MHCB shall receive a pre-admission screening for the purpose of determining the appropriateness of the admission to the MHCB program." *Id.* The MHDS details the specific criteria to receive treatment at the MHCB level of care. *See id.* "No inmate shall be admitted to the MHCB until a provisional diagnosis or valid reason for admission has been stated and the appropriateness determined." *Id.* "The MHCB has a length of stay of up to ten days." And "[n]ot all crises require admission to the MHCB." *Id.* "Crisis episodes for some inmate-patients may be handled on an outpatient basis." *Id.*

9.    The CIT is an interdisciplinary team that provides responsive crisis intervention strategies directed toward resolving patient crises through the procedures outlined in Exhibit 1 and the MHSDS Program Guide. The CIT essentially functions as a "mental health fire fighter" team. I have conducted about 2,600 CIT assessments on incarcerated persons during the time I have worked in the capacity of a CIT clinician.

10.    Licensed psychologists do not have prescriptive authority in California. Prescribing medication and speculating on why a patient was prescribed medication is beyond my scope of practice as a psychologist.

11.    My first interaction with Plaintiff was on the day of the incident on March 26, 2023. My second interaction with Plaintiff was on March 27, 2023. Besides these two days, I did not treat or interact with Plaintiff on any other day.

12.    Around 5:50 P.M., I received a CIT alert that Plaintiff required a mental health assessment. After reviewing Plaintiff's health and custodial records, I— along with the rest of the CIT—responded to Plaintiff and interviewed him in the

4

Restricted Housing Unit (RHU).[1] As reflected in Plaintiff's medical records, I evaluated the chronic and acute risk factors, protective factors for suicide, and warning signs of imminent risk. I provided judgments of risk for both chronic and acute risk as well as provided a rationale for these levels of risk.

13. I determined that Plaintiff's self-report of suicidal ideation was incongruent with the documentation and designed to manipulate staff to secure a higher level of care. During mental health evaluation, Plaintiff was relatively cooperative until he was told that he would not be going to CTC and that he can program at EOP level of care and work on coping skills to manage his stressors. In response to receiving this information, Plaintiff asked for my name and threatened to submit a grievance or complaint against me.

14. After reviewing Plaintiff's medical and custodial records and evaluating him, I made a medically reasonable clinical decision for Plaintiff to remain at his housing placement. Based on a review of Plaintiff's medical files and the circumstances, my clinical decision for Plaintiff to remain at his housing placement was appropriate. I memorialized my evaluation of Plaintiff and the disposition as outlined in Plaintiff's medical and mental health records.

15. Within the records related to Plaintiff, I used several abbreviations that are commonly used in my position. Below are several of the abbreviations and their meaning:

   a. bx: behavior.

   b. DTO: danger to others.

   c. dx: diagnosis.

   d. ETOH (severe): severe Alcohol Use Disorder.

   e. GAD: Generalized Anxiety Disorder.

   f. hi: homicidal ideation.

---

[1] The Administrative Segregation Unit (ASU) (sometimes referred to as "Ad Seg") has been reorganized as part of the RHU.

5

g.  HLOC: higher level of care.

h.  hx: history.

i.  IP: incarcerated person.

j.  LOC: level of care.

k.  PC: primary clinician.

l.  SA: suicide attempt.

m. si: suicidal ideation.

n.  SIB: self-injurious behavior.

o.  sxs: symptoms

p.  VH: visual hallucinations.

16.   Dr. Heidler had no role in evaluating Plaintiff on March 26, 2023. Licensed practitioners who work for CDCR or CCHCS are not required to have regular clinical supervision of their work.

17.   On March 26, 2023, I did not witness and was not present during Plaintiff's alleged suicide attempt after the CIT interviewed Plaintiff.

18.   I did not deem Plaintiff's actions after the CIT assessment a suicide attempt based on my review of Plaintiff's records, the lack of injury, and information from custody staff.  This assessment was further confirmed after speaking with Plaintiff on March 27, 2023.  I determined that Plaintiff appeared to stage a suicidal gesture that was deemed high rescue, low lethality behavior to affect a change in Plaintiff's level of care.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

6

19. I have never required inmates to harm themselves or follow through with their suicidal ideations as a prerequisite for them to receive mental health treatment. I never denied or threatened to deny Plaintiff mental health treatment unless he first hurt himself or followed through with suicidal ideations.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct to the best of my knowledge. Executed on June 25, 2026 in Papagayo, COSTA RICA

E. KRANZ, PHD
Senior Psychologist Supervisor
California Men's Colony
California Correctional Health Care Services